# Hantz *versus* The York Bank.

A sheriff is not bound for interest on money collected by him on execution until after demand made of him; and a rule on him to pay the money into court, when there is a dispute among the execution creditors about their several rights to it, and a delay for several years after that, during which the dispute existed, cannot be regarded as equivalent to a demand, even though he does not account for the disposition of the money in the mean time.

ERROR to the Common Pleas of *York county*.

This was an action of debt brought on 18th October, 1850, in the name of the Commonwealth for the use of the York Bank v. Jacob Hantz, on his official recognisance as sheriff; wherein the York Bank claimed for money collected by him on an execution, with interest. There was a case stated between the parties in the nature of a special verdict.

Hantz was elected sheriff in October, 1842. On the 24th August, 1843, the sheriff had in his hands several executions against H. Y. Slaymaker, in favor of different creditors, on which he had sold the lands of said Slaymaker. On that day the sheriff was

[Hantz *v.* The York Bank.]

ruled to pay the money into Court, by September 19, 1853, for distribution.    The sheriff was notified of the rule.

The order not having been complied with, the Court, on December 5, 1843, made an order on the sheriff to deposit in the York Bank "to the credit of the Court of Common Pleas, agreeably to the rules of Court on that subject, all money received by him from purchasers; and to deposit all moneys received by him in future from purchasers as fast as received in like manner; in the mean time the money to be considered in Court for the purposes of distribution." Of this order the sheriff had *knowledge.*  On the same day a commissioner was appointed to make distribution.

On January 8, 1844, the report of the commissioner was submitted.    By this report above $28,000 was awarded to the York Bank.

On 1st April, 1844, the Court directed a mechanics' lien claim to be paid, and confirmed the report as thus modified.

In September, 1845, issues were directed to try the validity of some of the judgments confessed in the name of the York Bank.

November, 1845, the sheriff paid to the bank above $18,000 on being indemnified.   On November 10, 1845, the first of the issues was tried, and resulted in favor of the bank.   A writ of error was taken, and on June 6, 1846, the judgment was affirmed. In May, 1846, the order as to the other issues was rescinded.   No further order of distribution was made.   The record of the issue taken up was not directed to be remitted, but it was found in the prothonotary's office in May, 1851, since the bringing of this suit.

It was further stated in the case stated that the sheriff made no deposit to the credit of the Court of Common Pleas, *nor was he formally notified to do it.*   He received all the purchase-money of said sales at or before the 8th November, 1845.

Also; there is no rule of the said Court of Common Pleas providing that money paid into Court shall be paid to the credit of the Court of Common Pleas, nor has it ever been done.  The only rule on the subject of paying money into Court is as follows, viz.—

To settle in future all disputes respecting the bringing of money into Court, in causes depending in the Court of Common Pleas, it is ruled, That the same practice shall prevail in all such cases, as the statutes 4 & 5 *Ann.* cap. 16 prescribes, according to the usage, practice, and construction under it, in the Court of King's Bench at Westminster, at the time of the late revolution."   It has been a common practice of this Court to treat money raised by a sheriff's sale as in Court, by agreement for the purposes of distribution, after a rule has been taken and served on the sheriff to pay it into Court; in which case the money has remained in the sheriff's hands, awaiting the order of the Court.   The Court has never refused to make such orders regarding any particular fund, as all the parties interested in that fund desired.

[Hantz v. The York Bank.]

The York Bank having received all the money to which it was entitled except above $7415.40, demanded the amount from the sheriff *shortly before the institution of this suit.* The sheriff refused to pay *interest*—what disposition he had made of the money in the interval did not appear.

May 5, 1853.—Opinion of FISHER, J.—"It is contended in this case that the plaintiff cannot recover because there was no final decree. Although the Court believe that the proceedings would have been much more regular, had there been a decree of Court settling the costs and ordering the payment of the money after the decision of the issue No. 141 Aug. T., 1845, by the Supreme Court; and the withdrawal of the issues Nos. 142 and 143 in the Court below; and whilst admitting that no other decree of distribution was made than that confirming the auditor's report *nisi* on the 8th of January, 1844, we have come to the conclusion (not without hesitation) to consider the confirmation *nisi* on that day as a decree of distribution, rather than at this late period turn the parties round to a new action. As regards the question of interest, the Court are of opinion that the neglect of the defendant to deposit the money '*in bank as fast as received*' is conclusive evidence that he had used it himself, and is therefore liable to pay interest from the 8th of November, 1845, when the case stated finds that he had collected the whole amount of proceeds of sale. The Court therefore render judgment on the case stated for the plaintiff for $7415.46, debt with interest from November 8, 1845, to this day, amounting in the whole to $10,748.66."

Error was assigned to such judgment.

*Evans* and *Mayer*, for Hantz.—It was contended that the sheriff was not in default till the right to the money was settled, and that he was not liable for interest unless the money was unlawfully withheld: 13 *Ser. & R.* 199. It is not stated in the case stated that the sheriff *used* the money, and it was not the province of the Court to assume such to be the fact: 3 *Wharton* 149; 3 *W & Ser.* 437; 6 *Harris* 493, Berks County v. Pile. It was not stated in the case stated that the sheriff neglected to deposit the money *in bank* as fast as he received it, but that he made no deposit "to the credit of the Court of Common Pleas," nor was he formally notified to do so. It was said that no rule of Court existed agreeably to which such a deposit could be made. It was said that from his failure so to deposit, it was not to be presumed that he used the money.

There must be a final decree or order determining the right be-

2 B 2

fore the sheriff is in default: 13 *Johns.* 255; 5 *Watts* 300; 1 *Whar.* 408; 4 *Watts* 411; 14 *Ser. & R.* 231.

Also there must be a *demand* or suit before interest is demandable: 3 *Barn. & Ald.* 696; *Watson on Sheriffs* 202; 1 *Root* 333; 3 *Mass.* 299; *Id.* 251; 4 *N. Hamp.* 199; 1 *Marsh. Ken.* 364; 2 *Dallas* 182. Such is the condition of the sheriff's recognisance, viz., to pay " *upon a request to him for that purpose made :* " 11 *Price* 575; 13 *Ser. & R.* 205; 4 *Watts* 59; 17 *Ser. & R.* 278; 9 *Barr* 308, Oliphant *v.* Frost; 9 *W. & Ser.* 59. The sheriff was in the light of a stakeholder: 2 *Dallas* 215; 11 *Ser. & R.* 190; 1 *Pet. C. C. Rep.* 521; 4 *Metcalf* 1; 8 *Watts* 73; 5 *Barr* 94.

The order of December 5, 1843, was not enforced by the bank. If it had been enforced, the payment into bank would have enabled the Bank to have made interest on the money deposited, but it would not have put the bank in a better situation as a judgment-creditor, or have added to the amount of its judgment. When a claim for interest does not depend on express contract, but is in the nature of damages, diligence on the part of the claimant to procure the money is necessary: Laing *v.* Stone, *Moody & Malkin* 259; 3 *Car. & P.* 376; 10 *Barr* 453; 8 *Taunt.* 45; 1 *Barn. & Ald.* 577, the case of an auctioneer.

In this case there was no evidence that the defendant used the money; and it was said not to have been incumbent on him to prove a negative.

*Chapin*, with whom was *Barnitz*, for defendant in error.—The right of the bank was finally established by the affirmance in the Supreme Court. It was said that no decree of distribution, subsequent to such affirmance, was necessary. By the affirmance the former decree was rendered absolute. The bank relies on the absolute decree of distribution made on 1st April, 1844. It was said that the order in August, 1843, was a demand on the sheriff, he having notice of it. But if that were not sufficient, the order of Court of December 5, 1843, was such.

It was said that it was not necessary to set out in the case stated that the sheriff had *used* the money; that having retained the money which he might have paid over, the presumption was that he used it: Reed *v.* Reed, 1 *W. & Ser.* 235; 3 *Bin.* 121. The money was to be considered in Court merely for *purposes of distribution;* that the Court might have *jurisdiction* over the fund, *in the mean time*, viz.: between the date of the order, viz. December 5, 1843, and until the sheriff could comply with the order, on the receipt of the last of the purchase-money, which was on or before the 8th November, 1845: 3 *Bin.* 121; *Price* 575, Ex parte Villers.

[Hantz *v.* The York Bank.]

The interest ran at least from the 6th June, 1846, if it had not begun to run before that time.

The opinion of the Court was delivered by

LOWRIE, J.—The bank was not in a condition to demand this money until the question of distribution was finally settled, and its demand, and the defendant's default after that, gave a right to interest. But the bank claims interest from the date of the collection of the money by the sheriff, on the ground that he was ruled to pay the money into Court and did not do it; and that, on the 5th December, 1843, he was ordered to pay the money into the York Bank, as it should be collected.

We cannot, however, regard the order of December 5 as a rule upon the sheriff; it was intended only to substitute the bank for the Court, as the place of payment. Moreover, it was not served on the sheriff as a rule, and we cannot treat his knowledge of it as equivalent to a service; for a party is not considered as insisting upon a rule which he does not serve, any more than on a summons in like circumstances. A rule granted and not served is abandoned. We have often heard it said that the sheriff is always in Court, but we know that this is not true in fact, and whatever value the saying may have as a fiction, it certainly cannot avail to convict him of a breach of his official recognisance for not noticing a rule never served on him.

Even the original rule seems to have been abandoned; for the parties treated the money as in Court during the two or three years they were contending about its distribution. It could not be treated as a demand by the bank for its share of the money, for its right to make a demand was not decided till nearly three years afterwards. Until then none but the Court had a right to the money as against the sheriff, and it could and would have enforced its right at any time on the motion of a claimant. Besides this, the only proper penalty for the sheriff's disobedience of the rule of Court is, that he is in contempt and liable to attachment. The parties cannot be allowed to wake up that proceeding for the purpose of claiming interest upon it, after having indulged it in sleep for over six years. And the plaintiff might be in danger of the statute of limitations if the rule of August, 1843, should be regarded as equivalent to a demand: 9 *State R.* 120. The interest should have been calculated from the date of the actual demand made after the decree of distribution.

JUDGMENT.—June 6, 1853. This cause came on for hearing at the present term and was argued by counsel, and thereupon it is considered that there is error in the judgment of the Court of Common Pleas, and that therefore the same be reversed; and this Court now proceeding

[Hantz *v.* The York Bank.]

to render such judgment as the said Court of Common
Pleas ought to have rendered, it is further considered
that the plaintiff do recover from the defendant the sum
of $8601 78, together with his costs: and it is ordered
that the record be remitted to the said Court of Common
Pleas, in order·that this judgment may be carried into
execution.